## THE KENILWORTH SANITARIUM

### *v.*

## THE VILLAGE OF KENILWORTH *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. DRAINAGE—*rules governing natural water-courses do not apply to an artificial channel.* The rules of law applicable to a natural water-course do not apply to an artificial channel dug for the sole purpose of diverting surface waters from the course they would naturally follow.

2. SAME—*drain constructed for one purpose cannot be used for another.* A channel constructed and used for over twenty years to drain surface waters only, cannot be thereafter used for the drainage of sewage without the consent of all parties having a right to the easement.

3. SAME—*organization of village does not affect prior easement of drainage.* Organization of a village on part of the land through which a ditch has been constructed and used for twenty years for the sole purpose of carrying off surface waters, does not affect the right of the owners of lands bordering on the ditch, and their grantees, to have the water in such ditch remain clean and wholesome and free from sewage or substances injurious to public health.

4. INJUNCTION—*when discharge of sewage into a ditch may be enjoined.* Owners of lands bordering on a ditch constructed and used for over twenty years for the sole purpose of draining surface waters, and which empties into a lake which is the source of the water supply for the complainants and other inhabitants of a village situated on such lands, may enjoin the discharge of sewage into the ditch by a sanitarium, even though the latter has a system which it is claimed purifies the effluent water.

5. SAME—*pollution of water may be enjoined to prevent acquiring adverse right.* Pollution of water, especially if it is of a continuous nature, may be perpetually enjoined upon the grounds of inconvenience of repeated action and the danger of the acquisition of an adverse right, even though the complainant could only recover nominal damages at law because of his failure to prove a nuisance or substantial injury.

APPEAL from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

On June 17, 1905, appellees, the village of Kenilworth and certain owners of property along a ditch extending through said village, filed their bill in the superior court of Cook county against appellant, the Kenilworth Sanitarium, to restrain it from emptying sewerage into said ditch. A decree was rendered granting the prayer of the bill, and the defendant below appeals.

The village of Kenilworth is a municipal corporation in Cook county, situated on the west shore of Lake Michigan. A certain ditch running through the village substantially east and west empties into Lake Michigan. A high ridge of ground about thirty feet above the level of the surrounding territory extends for many miles along the west shore of Lake Michigan and forms a barrier to the draining of water gathering west of said ridge into the lake. The land west of the ridge was lower than the ridge itself but higher than that occupied by the village. West of the ridge was swampy land known as "Skokie swamp," which was about two miles in width and many miles in length, extending in a northerly and southerly direction parallel with the shore of the lake but separated from it by said ridge. The natural drainage of the swamp and the territory west of the ridge was into the north channel of the Chicago river, while the natural drainage of the water east of the ridge was into Lake Michigan.

Between the years 1860 and 1870, under an act of the legislature passed February 15, 1855, authorizing the drainage of certain wet lands in townships 41 and 42, range 13, east, the drainage commissioners authorized to be appointed by that act constructed the ditch aforesaid for the purpose of more readily draining a portion of the wet lands lying west of the ridge and to partially relieve the flow of water into the north branch of the Chicago river. For the purpose of raising funds to pay the expense of cutting the ditch through the ridge the commissioners levied assessments upon the real estate now lying in the village of Kenilworth

and that lying west of the ridge, including the lands now occupied by the Kenilworth Sanitarium. The act creating the drainage commission was subsequently decided to be invalid by this court, and it was held that the persons who contributed or paid their assessments for the purpose of constructing the ditch paid the same by mutual agreement and consent, and that the ditch was constructed for the purposes set forth in said act, and none other. From the date of its construction to the present time the ditch has been used for the purpose for which it was made, with but one exception. In the territory west of the ridge the ditch, at the time of its original construction, had a cross-ditch leading into it at right angles, and near that cross-ditch is located the Kenilworth Sanitarium. It has, in connection with its plant, a sewerage system known as the "septic system," by means of which it is intended to purify the sewerage of said sanitarium, and, after the same has passed through certain tanks and filters, to cast the effluent waters thereof into the ditch after thus attempting to make them clear and inodorous and free from all harmful and deleterious substances. The bill was filed by appellees for the purpose of restraining appellant from permitting the water, after it was thus treated, to be emptied into the ditch, for the alleged reason that it was injurious to the public health, would depreciate the value of land along the ditch, and was not within the purpose for which the ditch was originally constructed.

Upon issues being joined, the court found that the use of the ditch for house draining, or for any drainage other than surface water, was not contemplated by the commissioners by whom it was originally dug or by the parties by whose mutual consent it was constructed, and that the right had never been acquired by the appellant to cast, either directly or indirectly, sewerage, or any substance or liquid of any description whatever, from its buildings into said ditch, with the exception of such surface water as naturally flowed into the same, and that the drainage of sewerage by said sani-

tarium, even though purified, would cause depreciation in the value of real estate along the line of said ditch. It and its successors, agents and assigns were forever enjoined and restrained from letting or permitting any sewerage or effluent waters from said sewerage, except surface water, from draining into said ditch, or depositing any liquids or substance, except as above specified, upon, in, under or over its ground, so that the same, by the act of nature, could be carried into said ditch.

HENRY S. ROBBINS, and FREDERICK A. BROWN, for appellant:

No damage, actual or threatened, to appellees is shown, either from overflow or pollution of the water. Sentimental damage has no place in the law. *Railroad Co.* v. *Trustees,* 212 Ill. 406.

The right of easement is to be liberally construed so as to promote the use and improvement of property. *Littlejohn* v. *Cox,* 15 La. Ann. 67; *Burris* v. *Ditch Co.* 104 Cal. 248; *Tallon* v. *Hoboken,* 60 N. J. L. 212; *Riverdale* v. *Westcott,* 74 Md. 311.

The increase of the volume of water in a drain from the sinking of wells or other proper use and development of the property is not an increase of burden of which the servient owner may complain, especially where no actual damage is shown. *Sloan* v. *James,* 13 Pa. 399; *Jackman* v. *Arlington Mills,* 137 Mass. 277; *Barnard* v. *Sherley,* 135 Ind. 547; *Bainard* v. *Newton,* 154 Mass. 255; *McCormick* v. *Horan,* 81 N. Y. 86.

Even as respects the quality of the water, the rights of the servient owner must to a certain extent yield to practical considerations calculated to permit a reasonable use of property. 30 Am. & Eng. Ency. of Law, (2d ed.) 382; *Perry* v. *Creamery Co.* 125 Iowa, 415; *Barnard* v. *Sherley,* 135 Ind. 547; *Bainard* v. *Newton,* 154 Mass. 255; *Coal Co.* v. *Sanderson,* 113 Pa. 126.

In any event, equity will not enjoin when the flowage or pollution is not such as to constitute a nuisance or work substantial injury to the servient owner. *Robb* v. *LaGrange,* 158 Ill. 21; *Daum* v. *Cooper,* 208 id. 391; *Sloan* v. *James,* 13 Pa. 399; *Columbia Co.* v. *Prison Comrs.* 92 Fed. Rep. 801; *Wilson* v. *Bondurant,* 142 Ill. 645; *Mead* v. *Mellette,* 101 N. W. Rep. 355; *Springer* v. *Walters,* 139 Ill. 419.

Warren Pease, for appellees:

The use of this ditch for the purposes of house drainage would be a source of continuous and increasing injury and damage to appellees and to their property. Injunction properly issues to prevent the pollution of a stream. *Kewanee* v. *Otley,* 204 Ill. 402; *Dwight* v. *Hayes,* 150 id. 273; *Dierks* v. *Highway Comrs.* 142 id. 197; Gould on Waters, secs. 546, 715; Wood on Nuisances, sec. 683; *Barrett* v. *Cemetery Ass.* 159 Ill. 385; *Dayton* v. *Drainage Comrs.* 128 id. 271; *Hicks* v. *Silliman,* 93 id. 255.

Even though great public mischief would result from the issuance of the injunction, and even though an important private or even public enterprise might be thereby hampered, the rights of property owners will be protected. Gould on Waters, sec. 546; *Dwight* v. *Hayes,* 150 Ill. 270; *Warren* v. *City,* 80 N. Y. Sup. 912; *Holsman* v. *Bleaching Co.* 14 N. J. Eq. 346.

Rights acquired by prescription or sufferance are fixed and determined by the user during the period of prescription and cannot thereafter be varied. Gould on Waters, secs. 225, 342, 344, 345; *Allen* v. *Water Co.* 28 Pac. Rep. 215; *Barris* v. *Ditch Co.* 37 id. 922; *Ballard* v. *Struckman,* 123 Ill. 636.

The character of this ditch is fixed and the rights of abutting property owners are determined by the circumstances surrounding its original construction. Washburn on Easements, 437; *McAllister* v. *Henderson,* 134 Ind. 453.

There is a clear distinction between natural and artificial water-courses and between the rights of riparian owners thereto. 28 Am. & Eng. Ency. of Law, 1039; Gould on Waters, sec. 225; *Power Co.* v. *Kelly,* 70 Wis. 287.

Appellees have the right to insist that the stream shall flow to their lands in its natural condition of purity. They are entitled to the water as it is in a state of nature, and the use they make of it is unimportant. Any change in the quality of water is an invasion of their rights and will be enjoined by a court of equity. *Holsman* v. *Bleaching Co.* 14 N. J. Eq. 335; *Water Co.* v. *Strawboard Co.* 53 Fed. Rep. 974; *Mann* v. *Willey,* 64 N. Y. Sup. 589; *Rubber Co.* v. *Rolthary,* 132 N. Y. 293; Gould on Waters, secs. 219-221; *Townsend* v. *Bell,* 24 N. Y. Supp. 193; *Richmond Manf. Co.* v. *Atlantic DeLaine Co.* 10 R. I. 106.

Actual, perceptible damage is not indispensable as the foundation of an action. It is sufficient to show the violation of a right. The law will presume some damage in such a case. *Webb* v. *Portland Manf. Co.* 3 Sumner, 189.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant seeks to reverse the decree of the court below upon the ground that no nuisance was proven or no actual or prospective legal damages or injury shown, and that equity will not enjoin the owner of a dominant heritage when the increased flowage or pollution of water does not constitute a nuisance or cause the owner of the servient estate any substantial injury or damage.

As shown by the foregoing statement of facts, the ditch in question was constructed by special assessment of lands between the years 1860 and 1870, under and by virtue of an act passed February 15, 1855, (Private Laws of 1855, p. 576,) which was held invalid. It was cut through a ridge which formed a natural water-shed, the waters on the west flowing into the north branch of the Chicago river and those on the east into Lake Michigan. It was dug for the purpose

of draining a portion of the wet lands lying west of the ridge, known as the "Skokie swamp." It was therefore not a natural water-course and not governed by the law applicable to natural water-courses, but was an artificial channel. For at least thirty-five years after its construction it was used for the original purpose for which it was dug, and no other. That purpose being to drain the lands west of the ridge, fixed the purpose for which it could subsequently be used, except by the unanimous agreement of the parties who caused it to be dug. This use was still firmly fixed by the great lapse of time between its original construction and the commission of the acts of the defendant below complained of in the bill.

In Washburn on Easements and Servitudes (2d ed. 53) it is said: "Where an easement, like an artificial drain, for instance, has been created and granted for a particular use and purpose it cannot be changed by the grantee to another though like use, nor can the grantee increase the amount or extent of such use beyond what was originally intended and embraced in the grant. Thus, A granted to B a right to construct and maintain an artificial trench across A's land, to drain the water from a certain cleared parcel of land by ditches made thereon discharging into this trench. The grantee afterwards drained the specific parcel by ditches running in a direction other than to this trench, but cleared another parcel and drained the water from that by ditches running into this trench. It was held that he had no right, under such grant, to increase the quantity of water intended to be thereby discharged through the trench, and that he had no right to discharge water coming from other sources than that specified in the grant, although it might not exceed in quantity that which was contemplated to flow through the trench, even though while doing it the grantee forbore to use it for discharging the water originally intended to flow through it." The same author, on page 121, says: "In considering user and enjoyment as evidence of possession of the prescriptive right, it will be proper to inquire what the nature and

character of such use must be in order to constitute such evi-
dence, before attempting to apply the same to the different
classes of easements. In the first place, the possession or
enjoyment of what is claimed must be long continued as
well as peaceable. What shall be taken to be a sufficiently
long period of use or enjoyment to create a prescription or
presumptive grant, in the modern use of the term, is under-
stood to correspond with the local period of limitation for
quieting title to land. * * * In Illinois the rule would
be the same if, as is doubtless the case, the period of pre-
scription and limitation as to lands is the same."

In 1889 the legislature passed a statute (Hurd's Stat.
1903, chap. 42, par. 187, p. 772,) which provides that when-
ever any ditch or drain, either open or covered, has been
heretofore constructed by mutual consent, license or agree-
ment of the owners of adjacent lands, either separately or
jointly, so as to make a continuance over the lands of said
several owners, or where the owners of the adjoining land
shall by mutual license, consent or agreement be permitted
to connect a drain with another already so constructed, or
where the owner of the lower land has connected a drain
constructed by the owner of the upper land, then such drain
shall be held to be a drain for the mutual benefit of all the
lands so interested therein. That statute, and the purpose
for which this drain was originally constructed, together
with the purpose for which it was continually used for thirty-
five years, fix upon it the rights of the adjoining land own-
ers and duly establish the purposes for which it may be
rightfully used. For twenty years after its construction the
village of Kenilworth was not in existence and there was
no such institution as the Kenilworth Sanitarium. Fifteen
years prior to the filing of the bill the village was organized
as a municipal corporation, and streets and alleys were laid
out and houses built therein. The ditch, as before said, ran
directly through the village, and it became necessary to con-
struct bridges and crossings over it at the streets and alleys,

and it was of the utmost importance to the inhabitants that the substances emptied into it should be clean and wholesome and in no way injurious to the public health. The owners of the various pieces of property along the ditch and in the village succeeded to the rights of the owners of the lands who had previously owned them. They could enforce the rights of the prior owners, and nothing could be emptied into the ditch without their consent, injurious to the public health, after the organization of the village any more than it could have been done before. A few years prior to the filing of the bill the Kenilworth Sanitarium was established near the ditch west of the ridge, and it sought to drain its sewerage into the ditch.

It is insisted that the evidence does not show that this sewerage would be a nuisance and that no prospective legal damages are shown. It is a well known fact that sewerage emptied into either a natural or artificial stream pollutes its water and renders it dangerous to public health and safety. Prior to the building of the sanitarium no sewerage whatever had been emptied into the ditch. If appellant is permitted to empty its sewerage into the ditch, every other property owner along its line and adjacent thereto would have the same right, and consequently the ditch, instead of being an outlet for the low lands west of the ridge so that they might be cultivated, would become an open sewer running through the center of the village,—and it certainly will not be seriously contended that private property owners would have any such right. The evidence also shows that the ditch empties into Lake Michigan in such a way as to endanger the water supply of the village if allowed to become polluted, and this, of itself, would be sufficient to prevent appellant from using it for sewerage purposes.

It is insisted, however, that appellant was constructing and has completed a plant for the handling of its sewerage in accordance with the most improved modern system; that water from its well is used to carry the sewerage to this

plant, wherein the sewerage is treated and separated from the liquid, and that the effluent water therefrom will be free from odor and in no sense pollute or contaminate the other waters passing through the ditch, and as the waters of this ditch were never used for drinking or domestic purposes no injury would result. The question as to the process through which the sewerage was to pass in order to purify it depends upon the manner in which that system is operated, the thoroughness with which the work is done, and that the sewerage should be thus continually purified in order to remove the danger. While there is evidence in the record tending to show that some of the impurities are removed, yet there is also evidence to the effect that the system in use is not as complete and efficient as is claimed. We are of the opinion that the methods pursued are so uncertain and dependent upon the manner in which they are operated that a court of equity should protect the appellees against the use of the ditch for carrying off such sewerage.

That equity will not enjoin the owner of a dominant estate when the increase of the flowage or pollution of water does not constitute a nuisance nor cause the owner of the servient estate any substantial injury or damage, cannot, in our opinion, be sustained. It is a well established rule of law that when the act done is such that by its long continued repetition and operation it may become the foundation or the evidence of an adverse right, equity will intervene to prevent such continuance. In *Plumleigh* v. *Dawson,* 6 Gilm. 552, this court held that where a party is deprived of a substantial right the law will imply damage, for otherwise, before the party would be able to prove actual damage, the wrongdoer might claim a right of prescription or upon the presumption of an agreement. In *Indianapolis Water Co.* v. *American Strawboard Co.* 53 Fed. Rep. 970, it was held that a perpetual injunction will be granted to restrain the pollution of water, especially if it is of a continuous nature, even if the plaintiff could only recover nominal damages at law, because

220—18

of the inconvenience of repeated action and the danger of the acquisition of the adverse right to pollute it by the continuance for twenty years.

Our examination of the whole record leads to the conclusion that the decree of the superior court is right, and it will therefore be affirmed.          *Decree affirmed.*