THE BORAH DRAINAGE DISTRICT, Defendant in Error, *vs.* MICHAEL ANKENBRAND *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 3, 1913.*

1. DRAINAGE—*when signature to a petition is sufficient.* The signature "Summers & Dickey," attached to a drainage district petition, is sufficient, where it is shown that C. W. Summers and T. L. Dickey were tenants in common of a tract of land in the proposed district; that Summers authorized Dickey to sign his name to the petition; that Dickey attached the signature in question, intending to sign for himself and his co-tenant, and that no other person by the name of Summers or Dickey owned land in the proposed district.

2. SAME—*a misrepresentation as to the law is not ground for withdrawing signature.* A representation by one having charge of a drainage petition to induce a land owner to sign the same, as to what the signer's rights would be with respect to tiling his outlet to another person's land and compelling that person to take care of the water, is merely a representation of law, and though untrue is not ground for withdrawing the signature.

3. SAME—*when land lying in different watersheds cannot be included in one district.* Lands lying in different watersheds, a portion of which cannot be benefited by the main system of drainage but must be drained by an independent system of ditches having no connection whatever with the main system, cannot be included in one district.

4. SAME—*petition should specify whether lateral is to be an open ditch or tile.* A petition for the organization of a drainage district should specify whether a certain proposed lateral is to be an open ditch or tile.

WRIT OF ERROR to the County Court of Wayne county; the Hon. VIRGIL W. MILLS, Judge, presiding.

Bonham & McLin, Boggs, Boggs & Heidinger, and George W. Johns, for plaintiffs in error.

Thomas H. Creighton, for defendant in error.

Mr. Chief Justice Cooke delivered the opinion of the court:

On March 11, 1911, a petition was filed in the county court of Wayne county for the organization of the Borah Drainage District. Numerous persons owning lands within the boundaries of the proposed district appeared and interposed objections to the petition, contending that the petitioners were less than a majority of the adult land owners and owned less than a major portion, in area, of the lands to be reclaimed or benefited, and that certain signatures to the petition were purchased and others were obtained by fraud; also contending that the proposed district included lands in two distinct watersheds, and that there was no community of interests with respect to drainage between the lands in the two watersheds. After hearing the testimony the court overruled the objections, found that the petition was signed by more than one-third of the adult land owners and that the petitioners owned more than one-half of all the lands within the boundaries of the proposed district. The court further found that the drains and ditches were necessary and would be useful for the drainage of the lands to be drained thereby for agricultural and sanitary purposes, and appointed commissioners to lay out and construct the proposed work. The commissioners reported that the district should be organized and that a system of drains similar to that proposed in the petition was proper and feasible. Upon the filing of the commissioners' report the objections above mentioned were renewed and were again overruled, and an order was entered approving the report of the commissioners, defining the boundaries of the district, and declaring the Borah Drainage District duly es-

tablished as provided by law. Michael Ankenbrand and other objectors have sued out this writ of error to reverse that order.

T. L. Dickey and C. W. Summers, as tenants in common, own 157.50 acres of land in the proposed district. When the petition was being circulated Summers was not at home, but he, by letter, authorized Dickey to sign the petition for him. Instead of signing their full names Dickey signed the petition "Summers & Dickey." Plaintiffs in error contend that in determining whether the petition was signed by the requisite number of persons owning the requisite number of acres in the district this signature should be disregarded. With this contention we cannot agree. Summers testified that he authorized Dickey to sign the petition for him, and Dickey testified that he signed the petition for himself and Summers, and that C. W. Summers and T. L. Dickey were the persons indicated by the signature "Summers & Dickey." No other person by the name of Summers or Dickey owned land in the proposed district, and it appears from the petition that C. W. Summers and T. L. Dickey, as tenants in common, own 157.50 acres therein, being the number of acres placed opposite this signature. That Dickey intended to sign the petition for himself and Summers, that he was authorized by Summers to sign it for him, and that he did attach a signature by which he intended to make himself and Summers petitioners, and that these were the only land owners in the district to whom this signature could refer, appears without contradiction. These facts warranted the court in regarding them as petitioners.

Upon the hearing Michael Ankenbrand and T. C. Endsley claimed that their signatures were obtained by fraud and misrepresentation, and it is contended that the evidence established their claim and that their signatures should not have been counted. Ankenbrand owns 262 acres of land in the district, having purchased 191 acres thereof from

Horace Holt, who had purchased the same land from Samuel Gash. Twenty acres of this 191 acres had been omitted from Ankenbrand's tax receipts. Ankenbrand testified that when he was requested by Samuel Gash and B. F. Thomas to sign the petition he told them that he would not sign it until he found out what had become of the 20 acres; that Gash replied that he had a deed for the 20 acres and that if Ankenbrand would sign the petition he and his wife would make Ankenbrand a deed to it, and that thereupon the witness said that if Gash would do that he or Thomas could sign his name to the petition. On cross-examination he testified that Gash and Thomas told him they would investigate the matter, and that Gash said that if there had been a mistake made he would correct it. This cross-examination is in harmony with the testimony of Gash and Thomas, both of whom testified that when Ankenbrand complained that 20 acres had been omitted from his tax receipts, Gash told him that he had sold the 191 acres to Holt which Holt had sold and conveyed to Ankenbrand, and that Thomas, who was an attorney, could examine the records, and if Thomas found that the 20 acres were omitted from the deed to Holt, he (Gash) would convey them to Ankenbrand without any expense to him. The evidence is uncontradicted that Thomas did examine the records and found and reported to Ankenbrand that the record title to the 20 acres was in Ankenbrand. Under this proof the court did not err in finding that Ankenbrand's signature was neither purchased nor obtained by fraud or misrepresentation.

Endsley testified that Noah Dalton brought the petition to him and requested him to sign it; that he refused to sign it on the ground that he would have to tile his outlet; that he further said that if he could tile to Lou Hunt's land and compel her to take care of the water he might sign the petition; that Dalton replied that if Lou Hunt signed the petition before Endsley signed it Endsley could ditch to

her land and could compel her to take care of the water, but that if he did not sign it he could not do that; that the witness replied that he would sign it if that was true, but that if he signed it and found that it was not true he would fight, and that Dalton said if that was not the law he would give him $100. Thereupon Endsley signed the petition, Mrs. Hunt having already signed it. The representations claimed to have been made by Dalton were merely representations of what the law would or would not permit to be done. Endsley had no right to rely upon such representations, and if he did so, it furnishes no ground for withdrawing from the petition. *Fish* v. *Cleland,* 33 Ill. 238; *Hooker* v. *Midland Steel Co.* 215 id. 444.

The court did not err in overruling the objections attacking the signatures to the petition.

It is evident from the petition that the purpose of organizing the district was to provide for the drainage of lands lying in Elm river bottoms, Elm river being a small stream which empties into the Wabash river. A main ditch following the general course of Elm river and utilizing its channel where practicable was proposed by the petition, and this main ditch and numerous laterals connected therewith drain nearly all of the lands included in the district. In addition to furnishing drainage for the lands in the Elm river bottoms the petition proposed the construction of two additional ditches, designated lateral No. 1 and lateral No. 2, neither of which has any connection with the main ditch or any other ditch of the district. The purpose of each of these so-called laterals is to drain a small territory of land adjacent to the Elm river bottoms but separated therefrom by a ridge, this territory being part of the Wabash river bottoms. It is proposed that lateral No. 1 shall empty into the Wabash river about two miles up-stream from the point where the main ditch empties into the Wabash river, and that lateral No. 2 shall empty into the Wabash river about one mile up-stream from the outlet of the main ditch. A

ridge, known as Shelton ridge, lies between Elm river and proposed lateral No. 2, and another ridge, known as Endsley ridge, lies between lateral No. 1 and lateral No. 2. The evidence is overwhelmingly in favor of the contention made by plaintiffs in error that when drainage ditches would be of any benefit to lands in the district, Shelton ridge prevents the waters from Elm river and its tributaries from flowing upon the lands to be drained by lateral No. 2, and that the waters from Elm river never reach the lands to be drained by lateral No. 1. It thus appears that it is sought by this proceeding to include in one drainage district lands located in different watersheds, and that a portion of the lands included in the district cannot be benefited by the system of drainage proposed for the lands lying in the Elm river bottoms but require an independent system of drainage, which it is sought to furnish by the construction of ditches complete in themselves and having no connection with the main ditch of the district. This is not authorized by the statute. (*Klinger* v. *People,* 130 Ill. 509.) The court should have sustained the objections of the objectors owning lands lying east of the Shelton ridge. For this error the order of the county court declaring the district organized must be reversed and the cause remanded.

It is also contended that the character of the proposed work is not sufficiently described in the petition. The only defect pointed out in this regard which requires consideration is the failure to specify whether proposed lateral No. 2 is to be an open ditch or a tile ditch. The petition should have described the character of this ditch, and in this respect it is insufficient. *Tennessee Drainage District* v. *Moye,* 258 Ill. 296.

The order of the county court is reversed and the cause remanded for further proceedings in conformity with the views expressed herein. *Reversed and remanded.*