(No. 11757.—Judgment affirmed.)

FRED KOHL et al. Appellants, vs. THE CHOUTEAU ISLAND DRAINAGE AND LEVEE DISTRICT et al. Appellees.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. DRAINAGE—*section 59 of Levee act, for construction of sub-districts, should be construed liberally.* The object of section 59 of the Levee act, for the organization of sub-districts, is to confer upon the commissioners authority to provide for more complete and adequate drainage in any portion of the original district which it is found is not sufficiently drained under the plans and specifications by which the district was organized, and said section should be liberally construed to give effect to such intention.

2. SAME—*when a sub-district may be organized although there are no main drains or ditches in original district.* A district organized under section 2 of the Levee act may construct ditches, levees or drains, or all of them, but it need not exercise all such powers at one time, and a sub-district may be organized under section 59 of said act even though no main drains or ditches were contemplated or constructed under the plans of the original district, which built levees, only.

3. SAME—*by organization of sub-district, waters thereon cannot be diverted from natural course onto the lands of another district.* By the organization of a sub-district the waters of a slough in the original district, which was never drained, cannot be diverted from their natural course onto the lands of an adjoining lower district, although the natural outlet for a number of years has been cut off by a railroad embankment and the plan of the sub-district is to drain the slough by enlarging an old ditch supposed to have been dug through the lower district when the embankment was built and which to a limited extent has taken the place of the natural outlet.

APPEAL from the County Court of Madison county; the Hon. HENRY B. EATON, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, and WILLIAMSON, BURROUGHS & RYDER, for appellants.

HILES & SIMPSON, for appellees the Chouteau Island Drainage and Levee District and John Hommert.

SPRINGER & BUCKLEY, for appellee Conrad Rath.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal by appellants, the commissioners of the Chouteau, Nameoki and Venice Drainage and Levee District, (hereinafter called the Chouteau district,) from an order of the county court of Madison county denying the application of the commissioners for the formation of a sub-district within the boundaries of the Chouteau district, to be known as the Long Lake Drainage and Levee District, hereinafter called the sub-district. The proposed sub-district will embrace about 3500 acres of land in the northern and eastern parts of the Chouteau district. Another district, known as the Chouteau Island Drainage and Levee District, (hereinafter called the Island district,) lies west of the Chouteau district. The commissioners of the Island district and certain land owners of that district, one of whom, Conrad Rath, is an appellee here, filed their objections to the application for the formation of the sub-district. The substance of the objections filed by the Island district is that the Island district lies below the level of the Chouteau district, and is, in fact, a lower district; that the plans proposed will result in a large portion of Long lake and adjacent sloughs and slashes being drained onto the lands of the Island district rapidly and its lands submerged, as the water of the Mississippi river frequently rises so high as to render it necessary for the Island district to close the outlet gate which it maintains through its levees to prevent the waters of the Mississippi backing up onto the district, and that if such additional waters are permitted to flow onto the Island district when the outlet is closed, it will cause an overflow of the lands in such district and greatly damage the same. The objections on the part of the land owners were principally as to the details of the work proposed to be done, such as insisting that additional lateral ditches be constructed, and questioning the necessity for the organization of the sub-district. The objection on the part of Conrad Rath, however, embodied the further

element that there is no law authorizing the organization
of such sub-district, and that if the same is organized ac-
cording to the plans proposed it will cause a flow of water
upon his lands, which will be damaged for the reason no
means are provided by which the water will be carried off
in times of high water.  The trial court sustained the ob-
jections and denied the application.  This appeal followed.

The Chouteau district was organized some years ago as
a drainage and levee district under the Levee act and em-
braces about 17,000 acres of land in Chouteau, Nameoki
and Venice townships, in Madison county, from which the
district takes its name.  The lands lie in what is commonly
spoken of as the American bottoms, in the western part of
that county.  The Island district lies immediately west and
south of the Chouteau district and between it and the Mis-
sissippi river.  The Island district embraces about 2000 acres
of land and is protected from overflow from the Missis-
sippi river by levees extending along the western border.
Another body of water, spoken of as Chouteau slough,
which is about three miles in length, lies between the Chou-
teau district and the Mississippi river.  This slough for the
most part lies east of the lands of the Island district and
immediately west of the Chouteau levee between the dis-
tricts.  Some years ago the north end of the slough was
closed by a dirt embankment, which was in part torn out
by subsequent floods.  It was, however, re-built, so that at
the present time there is no communication between the
north end of the slough and the river.  The south end of
the slough is separated from the river by a levee, spoken
of as Buenger's dike, through which an iron pipe is con-
structed, controlled by a valve to permit the escape of water.
This valve is so constructed that it can be closed when the
river is at a high stage, to prevent an overflow or back-
flow of the water of the Mississippi river onto the district.
The Chouteau district has constructed a levee just east of
it, approximately parallel with the Chouteau slough.  The

north end of this levee is in section 20 and is called the head of the levee. There is also a sink hole in section 20, which is in the northern part of the proposed sub-district, through which waters seep into the Chouteau district from the Mississippi river in times of high water. This hole is supposed to have a subterranean connection with the Mississippi river. At an early date a levee was constructed along the north line of section 29, extending east from the Chouteau levee north to the east corner of section 29 and thence north along the line between sections 20 and 21 to a point where it intersects the Chouteau levee on the north. This levee is spoken of in the evidence as the "old abandoned levee."

Another body of water, spoken of as Long lake, lies in the eastern part of the Chouteau district and is to be included in the sub-district. The principal object of the sub-district seems to be to provide adequate drainage for this body of water. Long lake is an irregular body of shallow water about three miles in length and from 150 to 300 feet in width, extending from a point in the western part of the southwest quarter of section 27 north across the west half of section 22 and thence west across the south half of sections 15 and 16. It has no connection with the Mississippi river or any other body of water except through a ditch called Stanley ditch, which connects with its westerly arm in section 27 and extends west to Chouteau slough. This ditch crosses the land of appellee Conrad Rath, situated in the southwest quarter of section 32. In addition to this lake there are a number of slashes, sloughs and other low lands in the district which are to be drained by the proposed improvement. A community spoken of as Mitchell is located east of the south end of Long lake, on the south line of section 27. Originally Long lake extended to the south and east of Mitchell, but some time prior to 1877 a highway, consisting of a solid embankment, was constructed across the lake at that point, running from

southwest to northeast across section 27. Subsequently several railroads were built across the lake at this point, running in the same direction, and since that time there has been no connection between that portion of Long lake lying west of the highway and railroad embankments and the rest of the lake extending north and east of Mitchell. One of the railroads, the Chicago, Peoria and St. Louis, passes through the Chouteau district in a northeasterly direction across the southwest quarter of section 32, the northeast quarter of that section, the southeast quarter of section 29, the northwest quarter of section 28, the southwest quarter and the northwest corner of the northeast quarter of section 21, the southwest quarter of section 16, and on in a northeasterly direction through that section. Stanley ditch, which was dug by a man by that name in about the year 1880, extends from Chouteau slough on the west through the Chouteau levee and eastward about a mile across the northern part of section 32 to a point where it intersects the Chicago, Peoria and St. Louis embankment. At this point it connects with the slashes extending eastward to Long lake. Where the ditch intersects the Chouteau levee a 36-inch pipe passes through the levee, provided with a valve, which can be opened or closed to regulate the flow of the water through the levee. Another similar pipe passes through the levee of the Island district at the lower end of Chouteau slough. Since its construction Stanley ditch has been the only outlet for the water of that part of Long lake and its adjacent sloughs, slashes and low lands in the sub-district. The circumstances and conditions under which the ditch was dug are not satisfactorily shown by the evidence.

The plan proposed is the construction of a main ditch commencing at Chouteau slough, in the Island district, and extending in a northeasterly direction to Long lake. This ditch is to be 5500 feet in length and to follow the general course of Stanley ditch. It is to be 20 feet in width for the first 4600 feet of its course from its outlet and 16 feet

in width for the balance of its course. This ditch will intersect the Chouteau levee about 15 feet north of the present iron pipe in Stanley ditch. A concrete culvert 4x7 feet inside measurement, provided with sluice gates that can be opened and closed to regulate the flow, is to be placed in the ditch where it crosses Chouteau levee, and a similar culvert is to be constructed in the Island levee where it crosses Chouteau slough at the south where the same empties into the Mississippi river and is to take the place of the present iron pipe in the levee at that place. The seepage from the sink hole in section 20 is to be taken care of by building a levee around the hole and cutting down the old abandoned levee to within two feet of the natural surface at the northeast corner of section 29 and placing a 30-inch iron pipe through the levee at an elevation of 417 feet, Memphis datum, to drain the water on section 20 into Chouteau slough through the proposed ditch. This section has had no drainage since the old levee was constructed.

The proceedings for the organization of the sub-district were instituted under the provisions of section 59 of the Levee act. (Hurd's Stat. 1916, p. 1014.) That section, in so far as its provisions are necessary to be noted here, provides as follows: "If, after an assessment of lands throughout the district has been made for the purpose of constructing drains or ditches, or enlarging or repairing the main drains or ditches of said district, according to the profiles, plans and specifications of the commissioners, as reported and confirmed, there remain lands in particular localities in said district, which are in need of more minute and complete drainage, and it shall appear to the commissioners that, in their judgment, additional ditches, drains, outlets, levees, pumping plants or other work are needed, in order to afford more complete drainage, they may prepare a special report as hereinafter provided and file the same and organize a sub-district in the manner hereinafter set forth without the necessity of a petition of the land own-

ers therefor;   *   *   *   and in all cases where, upon written applications to the commissioners,   *   *   *   it shall appear that additional ditches, drains, outlets, levees, pumping plants or other work are necessary in order to afford more complete drainage to such locality, it shall be the duty of such commissioners to examine such lands, and lay off and make plans, profiles and specifications of such additional work, and an estimate of the cost of the same and make a special report thereof, which special report, whether filed on petition of the land owners or not, shall describe all of the lands which will be either benefited or damaged by such additional work, together with the names of the owners, when known."

The first point made is that this section does not authorize the organization of a sub-district where the plans and specifications for the original district do not provide for the construction of any main ditch or ditches within the confines of the original district. It is conceded that in the plans for the organization of the Chouteau district no provision was made for the construction of any such drains and that none have been constructed by that district since that time. It is therefore insisted that none can be constructed at this time or a sub-district organized for that purpose,—in other words, that the construction of a main ditch in the original district is a condition precedent to the organization of a sub-district for the purpose of more minute drainage. This contention is based upon a narrow and literal construction of the language of the first part of section 59, which provides that if after an assessment has been made for the purpose of constructing drains or ditches or enlarging or repairing the main drainage ditches there shall remain lands in the district which are in need of more minute or complete drainage or additional ditches, drains, levees or pumping plants, the commissioners may prepare a special report and organize a sub-district. If this language were to be construed strictly and literally there

would be much force in the argument that sub-districts could be organized only in those districts in which one or more main drains or ditches had been constructed by the commissioners of such original district. We are not, however, inclined to give this statute such a strict construction. The object of the section was to confer upon the commissioners authority to provide for more complete and adequate drainage in any portion of the district which it was found was not sufficiently drained under the original plans and specifications by which the district was organized, and its language should be liberally construed to give effect to such intention. Drainage districts of this character are organized under section 2 of the Levee act. (Hurd's Stat. 1916, p. 992.) That section authorizes the organization of drainage districts to construct a drain or drains, ditch or ditches, levee or levees, or other work. Drainage districts organized under the provisions of this statute possess all the powers conferred upon them by the provisions of that section and may construct drains or ditches, levees or drains or ditches and levees, and it is not essential to the exercise of such powers that all of the powers shall be exercised in the first instance. It is sufficient that the proper proceedings be taken for the organization of a district and drains or levees constructed, and it is not necessary that the district construct, in the first instance, drains or ditches which it deems unnecessary, in order that it may retain the power to subsequently construct such drains or ditches as subsequent events may show are necessary to afford adequate protection to the lands of the district from overflow or damage from water. To hold otherwise would be to require that every drainage district organized under this section must provide, in the first instance, for the construction of one or more main drain or drains whether the same be deemed necessary or not, in order that it might take advantage of the provisions of section 59 and organize sub-districts for the purpose of furnishing more complete

and adequate drainage to particular portions of the district which subsequently appeared not to be properly protected or drained by the improvement as originally constructed. The evident intention of the legislature was to provide for the organization of sub-districts, under the provisions of section 59, in all cases where sub-districts were necessary, even though no main drains or ditches are contemplated or constructed under the plans for the original organization of the district.

The next point made is that the plans and specifications for the sub-district provide for the diversion of the waters from a natural water-course into an artificial channel and the casting of such waters upon the lands of the Island district and of appellee Rath, through whose lands Stanley ditch passes. This is by far the most serious question in the case. As we read the record, Long lake originally was a very much larger body of water and extended southeasterly of the community known as Mitchell. It is claimed by appellees,—and we think the evidence fairly supports that contention,—that the waters from this lake originally drained out through the south and east portions of this lake into a stream known as Cakohia creek and thence into the Mississippi river; that this was its natural outlet until the highway and railroad embankments were constructed across Long lake at or near Mitchell, some time about 1880, the exact time not being shown by the evidence. When these embankments were constructed no provision was made for the passage of the water of Long lake through the embankments into its natural outlet, and since that time all of that portion of the lake west and north of Mitchell, in the Chouteau district, has been cut off from drainage, except such waters as might flow out through Stanley ditch. It further appears that Stanley ditch, which it is proposed to utilize for the purpose of affording drainage for Long lake and its accompanying sloughs and slashes, was constructed about the year 1880. There is nothing in the evidence to

show how this ditch came to be dug, or whether it was constructed under a claim of right to drain the waters in that direction or by leave and license of the land owners across whose lands it passes and connects with Chouteau slough. About all the evidence shows on this question is that the ditch was constructed about the year 1880 by the man from whom it takes its name, and that it was cleaned out once or twice since that time by some of the land owners in the district. The plan proposed is to deepen and widen this ditch and greatly increase the flow of water through the ditch and empty it into Chouteau slough. No right is or can be claimed to use this ditch except that of user. In this condition of the record appellees insist this right extends no farther than to drain those waters which were accustomed to flow through this ditch before the organization of the proposed sub-district. They cite in support of this contention, *Kenilworth Sanitarium* v. *Village of Kenilworth,* 220 Ill. 264, and *Elser* v. *Village of Gross Point,* 223 id. 230.

In the *Kenilworth case* an artificial ditch had been dug by special assessment for the purpose of draining a portion of the wet land lying west of a ridge which extends along the shore of Lake Michigan, east through this ridge. Subsequently the village of Kenilworth was organized, bordering on the shore of Lake Michigan at the place where this ditch passes through the ridge and into the lake. The village undertook to empty its sewage into the lake, and certain owners of land along this ditch filed their bill for an injunction to restrain the village from doing so. It was there pointed out that the ditch was dug for the purpose of draining a portion of the lands lying west of the ridge, known as Skokie swamp; that it was not a natural watercourse and had been used solely to drain the lands west of the ridge, and that it could not be used for any other purpose except by the unanimous consent of all the parties who caused it to be dug. It was there said, quoting from

Washburn on Easements and Servitudes: "Where an ease-
ment, like an artificial drain, for instance, has been created
and granted for a particular use and purpose it cannot be
changed by the grantee to another though like use, nor can
the grantee increase the amount or extent of such use be-
yond what was originally intended and embraced in the
grant.   Thus, A granted to B a right to construct and main-
tain an artificial trench across A's land to drain the water
from a certain cleared parcel of land by ditches made there-
on discharging into this trench.   The grantee afterwards
drained the specific parcel by ditches running in a direction
other than to this trench, but cleared another parcel and
drained the water from that by ditches running into this
trench.   It was held that he had no right, under such grant,
to increase the quantity of water intended to be thereby
discharged through the trench, and that he had no right
to discharge water coming from other sources than that
specified in the grant, although it might not exceed in
quantity that which was contemplated to flow through the
trench, even though while doing it the grantee forbore to
use it for discharging the water originally intended to flow
through it."   The same doctrine is announced in *Elser* v.
*Village of Gross Point,* 240 Ill. 508.

The cases of *Broadwell Special Drainage District* v.
*Lawrence,* 231 Ill. 86, *Baumgartner* v. *Bradt,* 207 id. 345,
and *Zerban* v. *Eidmann,* 258 id. 486, cited by appellants,
do not conflict with the above view.   In those cases the
artificial channels were dug by the parties through whose
lands they passed to take the place of natural water-courses,
and it was held that such artificial channels were subject
to all the burdens of the natural water-courses whose place
they took.

Under the plans provided the capacity of Stanley ditch
is to be greatly enlarged and widened and deepened, and
if the improvement is to be of any practical benefit what-
ever, provision will be made for draining substantially the

entire body of water known as Long lake and its accompanying sloughs and slashes through this ditch into Chouteau slough, and also for the draining of the waters from section 20 into this ditch which have never flowed into this ditch before. Wholly regardless of the question as to what the rights of the district to drain the waters of Long lake and its accompanying sloughs and slashes into and through Stanley ditch and from that into Chouteau slough may be by reason of lapse of time and user, no such right can be asserted or claimed on the part of the land situated in section 20 which it is proposed to drain into this ditch by cutting down the old abandoned levee and placing a pipe through the same to permit the flow of waters from those lands into Stanley ditch. As to those waters it is very clear that there can be no right of drainage into Stanley ditch by user or the efflux of time. It is also clear that the body of water which it is expected to drain through this ditch is much larger than was accumstomed to flow through it. This much is demonstrated by the plans and specifications of the proposed ditch. Not only is the ditch to be deepened and widened, but the 36-inch pipe through the levees is to be taken out and replaced by a culvert 4x7 feet in diameter, inside measurement, to accommodate the increased flow of water that will be brought that way. It further appears that a large amount of water will be carried down this ditch and emptied into Chouteau slough and through it into the Mississippi river when the conditions of the river will permit. When conditions will not permit the opening of the sluice-gate into the Mississippi river this water will be collected in Chouteau slough. To the extent of the water thus brought down the volume of water in Chouteau slough will be increased and the lands of the Island district inundated. The evidence shows that for a number of years during a portion of the months of April, May and June of each year the water in the Mississippi river is at such a stage that it has been necessary to close

the outlet from Chouteau slough into the river to prevent a backflow from the river into the district. No provision is made in the plans to take care of the water from the sub-district when it is found necessary to close the outlet from Chouteau slough into the Mississippi river to prevent this backflow from the river into the Island district, or by which the water from this ditch flowing into the Chouteau slough may be stopped to prevent an overflow of the lands of the Island district. As we view this case, Stanley ditch is not a natural water-course, and the commissioners of the Chouteau district have no right, under the law, to divert the waters of Long lake and the waters on section 20 from the natural course in which they were accustomed to flow in a state of nature into Chouteau slough and to cast them upon the lands of Conrad Rath and the Island district.

It is unnecessary to consider the other points raised, further than to state that they have been considered, and that upon the question as to whether or not the plan proposed is feasible and the lands will be benefited more than they will be assessed there is a sharp conflict in the evidence. The testimony of the engineers on the part of appellants is to the effect that the plan is feasible and that the drainage conditions in both districts will be improved by the larger outlet from Chouteau slough affording more rapid drainage and the general water level in both districts will be reduced. The testimony of the land owners in the sub-district is that their lands will be benefited more than they are assessed. On the other hand, the engineers for the Island district, as well as some of the land owners, testified that the plan is not feasible; that the lands of the Island district will be damaged by the proposed improvement, and that the cost of the improvement will exceed its benefits. At most, the testimony on this question is conflicting and casts a serious doubt on the feasibility of the undertaking. The trial court had the advantage of seeing the witnesses and hearing them testify and explain the reasons upon

283 – 6

which their various opinions were based. Upon due consideration of the matter the trial court has found the issues in favor of appellees, and we are unable to say from a review of the evidence that its decision is not in accordance with the weight of the evidence. Under such circumstances the judgment of the trial court will not be disturbed.

For the reasons given the judgment of the county court must be affirmed.

*Judgment affirmed.*