(No. 15244.—Judgment affirmed.)
JOHN GOTTSCHALL *et al.* Appellants, *vs.* AUGUST ZIPPLE
*et al.* Appellees.

*Opinion filed June 20, 1923.*

1. DRAINAGE—*when levee drainage commissioners may organize sub-district under section 59 of Levee act.* Section 59 of the Levee act, providing for the creation of a sub-district within the boundaries of any levee drainage district, should be so construed as to give the commissioners ample authority to provide complete and adequate drainage for all lands in any district, whether or not the drains and ditches of the original district have been completed; and the amendment of 1919 does not change the meaning of the section. (*Kohl* v. *Chouteau Island Drainage and Levee District,* 283 Ill. 69, followed.)

2. SAME—*what determines whether lands should be included in sub-district.* Upon the petition of commissioners of a levee drainage district for the organization of a sub-district under section 59 of the Levee act, the question of the extent of the benefit to any particular lands is not to be considered, but the only question for determination is whether the lands included in the sub-district will receive any benefit at all, and if so they are properly included in the district.

3. SAME—*when plan of levee drainage district need not be submitted under section 29a of the Rivers and Lakes Commission act.* The proposed plan of commissioners of a levee drainage district for the creation of a sub-district need not be submitted to the Department of Public Works and Buildings under section 29a of the Rivers and Lakes Commission act, where the drain provided for the sub-district does not increase the flow or change the natural channel of any stream but discharges its water into a lake or slough which is not a stream and is not navigable.

APPEAL from the County Court of Madison county; the Hon. JOHN E. HILLSKOTTER, Judge, presiding.

HILES, NEWELL & BROWN, for appellants.

J. L. SIMPSON, and WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Chouteau, Nameoki and Venice Drainage and Levee District was organized more than thirty years ago and includes within its boundaries a substantial part of three townships. About five years ago there was an attempt to organize a sub-district in the northwestern part of the main district, but objections to its organization were sustained. (*Kohl* v. *Chouteau Island Drainage and Levee District,* 283 Ill. 69.) The opinion filed in that case gives a description of the territory sought to be included and the proposed plan for more minute drainage. In 1921 substantially the same lands were included in the proposed sub-district now before us but the scheme of drainage is entirely different. The commissioners of the main district filed their report recommending the organization of Long Lake Drainage and Levee Sub-district. Objections were filed and overruled and the order organizing the sub-district entered. This appeal followed.

The sub-district is about three miles long north and south and two miles wide east and west and includes about 3500 acres of low, flat lands located in township 4, north, range 9, west, in Madison county. Running through the district from north to south is the Chicago, Peoria and St. Louis railroad, which divides the district into substantially two equal parts. West of this railroad the lands are, generally speaking, high bottom lands and most of them are in cultivation. East of the ridge on which the railroad is built the lands are low and marshy and the territory is a succession of ridges, lakes and slashes. Extending from north to south along the entire eastern part of the sub-district is Long lake, which is a shallow body of water ranging in width from a few rods to a quarter of a mile. The main ditch of the sub-district begins in the southwest corner of the district and extends northeast to the east part of

the district, thence north and west to the northwest corner of the district, where a pumping station is to be located and the water pumped over the levee into a portion of Long lake which is cut off by and is north of the levee of the main district. The principal lateral ditch leaves the main ditch about the middle of the district and runs to the middle of Long lake. Substantially 1000 acres in the east part of the district is wholly unfit for cultivation and about 500 acres in the middle of the district is subject to cultivation only a part of the time. The lands in the district are flat and there is little drainage in either direction, but what fall there is is to the southwest. The proposed improvement will take the water north through the district, thereby reversing the natural course of drainage. The fall of the surface of the lands is about six inches to the mile, so that the elevation at the north end of the district is about one and a half feet more than at the south end of the district. The main ditch is designed to have a fall of six inches to the mile, so that the elevation of the bottom of the ditch is about 412½ (Memphis datum) at the southwesterly end and substantially 410 at its northerly end. The elevation of the Mississippi river at normal stage is 408,—about two feet below the bottom of the main ditch at the pumping plant and about ten feet below the average elevation of the land in the sub-district. The 1000 acres of land that is now at all times under water or too wet to cultivate is very fertile land and will be worth more than $100 an acre when drained. The lands which can now be cultivated only during dry seasons will be doubled in value if properly drained. The engineers estimate that the entire improvement will cost $76,670.

This proceeding is brought under section 59 of the Levee act. Appellants contend that before a sub-district can be organized for the purpose of affording more complete drainage the main district must have had as a part of its system, in addition to its levees, certain drains and ditches.

This same contention was made in *Kohl* v. *Chouteau Island Drainage and Levee District, supra,* but the court refused to give the statute that construction. It was there held that the section should be liberally construed, so that the commissioners would have ample authority to provide complete and adequate drainage for all lands in the district. In 1919 this section was amended by adding in three places the phrase, "in any original district which maintains a levee as a part of its work." (Laws of 1919, p. 456.) So far as we are able to see, this does not change the meaning of the section and we have no means of knowing why the words were added. Whatever the purpose of the amendment, it did not affect the construction heretofore given the section.

Chouteau Island Drainage and Levee District, which is immediately west of the sub-district, objects to the proposed scheme of drainage on the ground that the flow of water into the island district will be increased. In the southwest corner of the sub-district is Stanley ditch,—an artificial ditch which has afforded some drainage to the lands in the sub-district for more than forty years. This ditch empties into Chouteau slough, which flows along the easterly side of Chouteau island. By the proposed scheme of drainage for the sub-district the main ditch will begin in the easterly end of Stanley ditch. It is not contended that the flow will be increased through Stanley ditch if the proposed drainage system is successful, but it is contended that if the pumps fail, so that the water will not be taken out of the sub-district at the north end, it will flow southwesterly through the main ditch and continue through Stanley ditch into the Chouteau Island district. Four engineers who were widely experienced in drainage in the Mississippi river bottoms testified that the plan proposed by the commissioners was feasible and that there would be no flowage west into Stanley ditch. So far as this record shows, the great preponderance of the evidence is that no additional burden will be cast

upon the servient lands of the island district, and its objection was properly overruled.

Six land owners whose lands lie in the western part of the district object to being included in the district for the reason that their lands will not be benefited. As we have said, these lands are all second bottom lands and have little need for drainage. On most of the farms, however, there are low swales that are at times too wet for cultivation and the proposed system will give these places drainage. Furthermore, the draining of the swamp lands adjacent to these lands will improve the sanitary conditions and general appearance of the entire section, thereby benefiting all of the lands within the boundaries of the district. The only question for determination in this proceeding is whether the lands included in the district will receive any benefit at all. If they will, they are properly included in the district, and the question of the extent of benefit is left for determination in another proceeding. *Hayes Branch Drainage District* v. *Illinois Central Railroad Co.* 290 Ill. 124.

Gillian E. Richmond, who owns lands inside the levee and who also owns lands on the outside of the head levee over which it is proposed to pump the water from this district, contends that the plan is not feasible, and also objects to the pumping of water onto her land, claiming no provision is made for compensating her for the damage done her farm. The great weight of the testimony is that the plan is feasible, and so that objection was properly overruled. When the head levee was built to protect the lands of the main district from the overflow of the Mississippi river it was built across Long lake, and so a part of the lake extending from the levee to the river is, and has been for many years, a dead body of water. It is now proposed to pump the water into this portion of Long lake and to dig an outlet ditch connecting the old lake bed with the river. A part of the plan is to condemn a right of way along and through this part of Long lake, and, of course, Mrs. Rich-

mond will be compensated for the land thus taken. If it appears that she will suffer additional damage by reason of these waters being pumped over the levee she has the right to file a cross-petition to recover such damage as she will be able to prove. The proof in this record shows that the pumping of the water over the head levee into that part of Long lake on her farm will not damage her farm to any appreciable extent for the reason that the banks of the lake at this point are practically as high as the levee, and for the further reason that the water is practically being pumped into the Mississippi river.

Finally it is contended that the proposed plan should have been submitted to the Department of Public Works and Buildings before the commissioners made their report to the court recommending the organization of the sub-district. This contention is based upon section 29a of the Rivers and Lakes Commission act, which provides: "Before any drainage district now or hereafter organized in this State shall undertake any work which will increase the flow of water to be discharged into any of the streams of this State or which will involve any change in the natural course of any stream, work therein or improvement thereof, such district or districts shall submit the proposed plans for such work to the Department of Public Works and Buildings for approval." (Laws of 1921, p. 848.) Section 18 of the same act provides: "Wherever the terms public waters, public bodies of water, or streams and lakes are used or referred to in this act, they shall be construed to mean all open public streams  *  *  *  and lakes capable of being navigated by water craft, in whole or in part, for commercial uses and purposes, and all lakes, rivers, and streams which in their natural condition were capable of being improved and made navigable, or that are connected with or discharge their waters into navigable lakes or rivers within, or upon the borders of the State of Illinois, together with all bayous, sloughs, backwaters, and submerged lands that

308—28

are open to the main channel or body of water and directly accessible thereto." The portion of Long lake into which it is proposed to pump the waters from this sub-district is not within the meaning of section 29a. It is not a stream, nor is it navigable, nor in its natural condition capable of being made navigable. After it emerges from the high banks immediately beyond the head levee it spreads over a lot of low swamp lands and loses its identity as a body of water.

The judgment of the county court is affirmed.

*Judgment affirmed.*