THE HANOVER DRAINAGE AND LEVEE DISTRICT, Appellant, *vs.* THE SANTA FE DRAINAGE AND LEVEE DISTRICT, Appellee.

*Opinion filed December 16, 1925.*

DRAINAGE—*when ditch of one district cannot be connected with that of another.* The ditch of one levee drainage district cannot be connected with the ditch of an adjoining district by a special assessment proceeding where the proposed connection will have the effect of removing a natural barrier or watershed and will cause the water to flow in a direction opposite to the course of the natural drainage.

APPEAL from the County Court of Clinton county; the Hon. BARNEY OVERBECK, Judge, presiding.

MURRAY & NIEHOFF, and CRAIG & CRAIG, for appellant.

BROWN & BURNSIDE, and MAURICE B. JOHNSTON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Hanover Drainage and Levee District in Clinton county was organized in 1885. Subsequently the Santa Fe Drainage and Levee District in the same county was organized. Both districts are in the Kaskaskia river bottom, and the river runs substantially east and west on the south side of the districts. The Hanover district has a levee on the east and south sides, and the Santa Fe district has levees on the east, south and west sides. On the north of both districts are the bluffs, and the levees on the south sides are about one-half mile north of the river. The Santa Fe district lies immediately east of the Hanover district. The east levee of the Hanover district and the west levee of the Santa Fe district are parallel and about eighty feet apart. They are called the twin levees, and between them

is a stream called the Weast branch, which flows south and empties in the river. Overflow from that stream is prevented by the levees on the east and west sides of the districts. The Santa Fe district has an internal system of drainage by open ditches and a pump where the main ditch crosses the levee to its outlet in the Kaskaskia river and at times pumps water from the main ditch inside the levee into the ditch outside the levee. The Hanover district has an internal system of drainage, its main open ditch beginning about a fourth of a mile west of the east side of the district and running in a westerly direction about four miles to Shoal creek, a rather large stream which empties in the river south of the district. There is no levee on the west side of the Hanover district. The Santa Fe district maintains flood gates, which are kept open when the river is not at an overflow stage and are closed at times of overflow. From 1000 to 1500 acres of land in the southeasterly part of the Santa Fe district do not receive adequate protection, and a land owner or owners in that part of the district filed in the circuit court a petition for *mandamus* to compel the drainage commissioners to install improvements which would relieve their lands from the water. The court ordered the commissioners to install a sufficient pump or adopt some scheme by which the lands would be more efficiently drained. With the assistance of an engineer the commissioners of the Santa Fe district adopted a plan to construct a ditch from the Santa Fe ditch west to the twin levees, thence under the levees with a re-enforced concrete double box-flume, thence westerly from the levees approximately a fourth of a mile to the main ditch of the Hanover district, and thence follow the main Hanover ditch, deepening it to its outlet in Shoal creek, about four miles. The commissioners of the Santa Fe district filed their petition in the county court for permission to construct the work according to the plans suggested, at an estimated cost of $35,000, and for authority to levy a special assessment.

The petition was based on the authority of the act of 1913. (Laws of 1913, p. 272.) The commissioners of the Hanover district filed objections to granting the petition. The objections were heard by the court, were overruled and the prayer of the petition granted. The commissioners of the Hanover district have prosecuted this appeal from that judgment.

The principal objections argued in the briefs are, that the fall of the land from the east side of the Hanover district is toward the east, and the proposed ditch to the west to connect with the Hanover ditch would require the removal of a natural barrier to the flow of the water to the west; that the levee and ditch of the Hanover district have been constructed and maintained more than twenty years, and the Statute of Limitations bars appellee from connecting its ditches with those of appellant; that the proposed deepening and widening of appellant's ditch constitute taking property for public use already devoted to a public use and would benefit only appellee.

In the view we take it will only be necessary to discuss the first objection referred to, viz., that the proposed connection of the ditch of the Santa Fe district with the main ditch of the Hanover district involves the change of the natural flow of the water to the east in the Santa Fe district to the west over the Hanover district by the removal of a natural barrier or watershed.

The county court found and recited in its judgment "that the general fall of the land along the extreme east side of said Hanover district is toward the east." It is proposed, by cutting a ditch from the Santa Fe district west to and under the twin levees, and about a quarter of a mile further west in the Hanover district to intersect its main ditch, to divert the flow of water from the east to the west. The reason why the water flows east from the east side of the Hanover district, as found by the court, is that "the general fall of the land" is in that direction,—or, in other

words, the land east of the Hanover district is lower than the east side of said district. This barrier of high land would have to be removed by means of the ditch to turn the flow to the west. In *Borah Drainage District* v. *Ankenbrand*, 260 Ill. 335, it was held lands in different watersheds could not be organized into one district. The owner of higher land cannot remove a natural barrier or watershed and cause the water to flow upon lower land which did not naturally flow in that direction. (*Kohl* v. *Chouteau Island Drainage District*, 283 Ill. 69; *Dayton* v. *Drainage Comrs.* 128 id. 271.) The rule certainly applies to a change in the flow from the lower lands upon the higher lands. The author of the chapter on drains in 19 Corpus Juris, page 703, discussing the Illinois statute authorizing the connection of one district with the drains of another district, says: "A drainage district has no right to connect its ditch with the ditch of another district so as to drain into the latter water which would naturally flow in another direction but for the removal of a natural barrier or watershed."

· Appellee contends the general slope of the land at the east side of the Hanover district is to the southwest and a shallow ditch will cause it to run either way, but the court by its judgment found the proof showed the general fall of the land is east. If the court was correct in making that finding the connection was not authorized and the judgment was erroneous.

We are not impressed with the validity of the other objections.

For the reason stated the judgment is reversed and the cause remanded.                    *Reversed and remanded.*